UNITED STATES v. PARK & TILFORD.

(Circuit Court of Appeals, Second Circuit.  January 7, 1907.)

No. 83 (4,075).

Customs Duties—Unusual Coverings—Additional Duty.

Under Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924], the "additional duty" provided therein for unusual coverings used "otherwise than in the bona fide transportation" of their contents to the United States, is not a substitute for the usual duty on coverings which accrues by including their cost in the dutiable value of their contents, as also provided in said section; but both duties should be imposed, the latter because the coverings subserve a use in transportation, and the former because they subserve an additional use after transportation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Customs Duties, § 20.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York (142 Fed. 202), affirming a

decision of the Board of General Appraisers (G. A. 6,111 [T. D. 26,-608]), which reversed the action of the Collector of the Port of New York in assessing certain imported merchandise under the Tariff Act of 1897. Act July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626].

J. Osgood Nichols and Henry A. Wise, Asst. U. S. Attys.
Edward Hartley (B. A. Levett, of counsel), for importers.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The articles in question are wooden boxes or cabinets containing cigars. They are more elaborate and ornamental than the ordinary cigar box of commerce, and it is undisputed that they are unusual coverings, designed, not only for the transportation of the cigars packed in them, but also for the purpose of enhancing their attractiveness when exposed for sale, and supplying a pleasing receptacle to contain them. The appraised value of the cabinets was $5 each, and they were invoiced as "sample cases" containing cigars. The customs officers included the value of the cabinets in determining the actual market value of the cigars, upon which the ad valorem duty of 25 per cent. on cigars was assessed and paid. The collector also imposed an additional duty upon the cabinets at 35 per cent. ad valorem, as manufactures of wood, under paragraph 208. Act July 24, 1897, c. 11, § 1, Schedule D, 30 Stat. 168 [U. S. Comp. St. 1901, p. 1646]. It is conceded that, if imported empty, the latter rate of duty would be the proper one; but it is contended that the collector was not warranted in imposing a double duty on the cabinets. His action was taken under section 19 of the customs administrative act (Act June 10, 1890, c. 407, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924]), which reads as follows:

"Sec. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks and coverings of any kind, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported. That the words 'value' or 'actual market value' whenever used in this act or in any law relating to the appraisement of imported merchandise shall be construed to mean the actual market value or wholesale price as defined in this section."

The language of this section is certainly plain and unamb'guous. It provides, first, that, whenever imported merchandise is subject to an ad valorem duty, the value upon which that duty is to be assessed shall include the value of all cases, crates, boxes, and coverings of any

kind. This is a requirement applicable to all importations of ad valorem goods. There is nothing in this part of the section to indicate that, under any contingency, a different rule shall be applied in assessing the valuation of any importation of such goods.

The section next provides that, if there be used for holding the merchandise, whether dutiable or free, any unusual covering, additional duty shall be levied upon such covering at the rate to which the same would be subject if separately imported. If this duty is to be "additional," it would seem to be the plain intent of the act that the aritcle which pays the "additional" duty shall also pay an initial duty. If it were intended that, in the event of an unusual covering, it should pay duty only at the rate to which it would be subject if imported separately, there would be no need to use the word "additional" at all. It is true that, when the imported merchandise is free, the duty on the unusual covering is not properly an "additional" one, but the word exactly covers a case like the present, and, unless it is to be wholly disregarded, should require the levy of two duties on the covering; one on such article as subserving a use in transportation, and the other on such article as subserving an additional use after the transportation.

In the majority opinion filed by the Board of General Appraisers, it is not disputed that such is the literal construction of the section; but they reach the conclusion that it was not the intent of Congress to exact a double duty. They suggest that the literal construction would produce a condition repugnant to fair dealing in the administration of customs laws; that it has been the policy of Congress so to frame these laws as to render them the least possible burden to the citizen and uniform in their administration; and that such construction is in conflict with the report of the committee of Congress in presenting to the House of Representatives the bill which upon its enactment by Congress became this act.

It is no uncommon occurrence, however, to find in tariff acts provisions expressly devised to accomplish some purpose other than the mere collection of duty. Some articles are exposed to such a rate of duty as will practically prohibit their importation. In some cases cumulative duties are provided for. Paragraph 313, Act 1897. Duty so high as to be characterized as penal is sometimes exacted to put a stop to some undesirable practice. Thus, when imported merchandise was inclosed in coverings designed for use otherwise than in the bona fide transportation of the merchandise, a duty of 100 per cent. was imposed by the tariff act of 1883. Act March 3, 1883, c. 116, § 7, 22 Stat. 486 [U. S. Comp. St. 1901, p. 750]. It is a fact of which the courts which hear customs causes will take notice that there has been much litigation as to the question of the usualness or bona fides of various "coverings," and that Congress has enacted many provisions to prevent the government from suffering loss of revenue by reason of the adoption of some unusual covering, designed to subserve a double purpose. It certainly would not be surprising to find that Congress had at last decided to accomplish this by prescribing a double duty, and we find nothing repugnant to fair dealing in such an enactment. In the case at bar, the cabinets, at 25 per cent. plus 35 per cent. pay only a little more than half what they would have paid under the act of 1883.

It appears, moreover, from the references to the Congressional Record set forth in the government's brief, that the report of the House committee upon which the Board of General Appraisers relied was made at a time when the bill did not contain any provision for "additional" duty. It was amended to its present shape subsequently, in the Senate (Cong. Rec. vol. 21, pt. 4, p. 3973), and the insertion of this word "additional" during the progress of the bill through the legislative body fairly indicates an intention to subject coverings like these to a double duty.

The decision of the Circuit Court is reversed.